UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PATRICIA JOHNSON                                                                                    PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:11-CV-446-S

COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

**FINDINGS OF FACT
CONCLUSIONS OF LAW
AND RECOMMENDATION**

**INTRODUCTION**

Plaintiff Patricia Johnson has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security that denied her application for supplemental security income (SSI). Johnson applied for SSI on June 3, 2008 (Tr. 136), alleging that she became disabled as of Nov. 20, 1997, due to depression and reoccurring headaches caused by brain tumor (Tr. 127, 141). Johnson's SSI application was denied on initial consideration (Tr. 75, 77-80, 220-33, 237), and again on reconsideration (Tr. 76, 84-87, 269-82, 286). Johnson requested a hearing before an administrative law judge (ALJ) (Tr. 88-90). ALJ Don Paris conducted a video-conference hearing from Lexington, Kentucky, on March 18, 2010 (Tr. 38-64). Johnson appeared with her attorney, the Hon. Stacey Hardin Hibbard. Both Johnson and vocational expert Betty Hale testified at the hearing (Tr. 41-59, 60-64).

Following the hearing, ALJ Paris entered a hearing decision on May 5, 2010 (Tr 23-32). In his decision, ALJ Paris found that:

(1)   The claimant has not engaged in substantial gainful activity since June 3, 2008, the application date (20 C.F.R. §416.971, *et seq*.).

(2)   The claimant has the following severe impairment: major depressive disorder (20 C.F.R. §416.920(c)).

 (3)  The claimant does have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §§416.920(d), 416.925 and 416.926).

 (4)  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple work activities in a low-stress, object-focused work environment in which contact with co-workers and supervisors would be infrequent and casual in a non-public work setting in which changes in work activities would be routine and gradual.

 (5)  The claimant is capable of performing past relevant work as a bottling line attendant at Jim Beam. The work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §416.965).

 (6)  The claimant has not been under a disability, as defined by the Social Security Act, since June 3, 2008, the date the application was filed (20 C.F.R. §416.920(f)).

Johnson requested review of ALJ Paris's adverse hearing decision by the Appeals Council (Tr. 14-19). The Council determined that no basis existed under the Social Security Rules to grant Johnson's request (Tr. 1-3). Johnson then filed her present complaint to obtain further review of the Commissioner's adverse decision. Her motion for summary judgment has been referred to the Magistrate Judge by the District Court (DN 12). The Commissioner has filed his fact and law summary in response (DN 13). Accordingly, the matter is ripe for consideration.

## CONCLUSIONS OF LAW

**a.** **Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g).

The statute, and case law that interprets it, requires a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

   The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**b.      Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See, 20 CFR §§ 404.1505, 416.905(a).  To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed.  20 CFR §§ 404.1520, 916.920(a).  At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled.  See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971.  *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities.  See 20 CFR §§ 404.1520(a)(4)(ii),  416.920(a)(4)(ii).  If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2.  *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations.  20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined

to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. See, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3) The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who can not return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

c. **Arguments for Reversal.**

Johnson in her motion for summary judgment alleges that findings of fact nos. 2, 3, 4, 5 and 6 are not supported by substantial evidence (DN 12, pp. 1-2). Her primary argument

5

is that ALJ Paris significantly erred at step 2 of the sequential evaluation process when he failed to include her migraine headaches as a severe impairment (DN 12, Memo. at 2). This error in Johnson's view cannot be harmless under *Maziarz v. Sec'y of H&HS,* 837 F.2d 240, 244 (6th Cir. 1987) because ALJ Paris did not include in his residual functional capacity (RFC) assessment any of the well-documented limitations arising from the symptoms caused by her migraines. These migraines necessitate that she regularly lie down and avoid physical activity. The medications prescribed to her by her treating physician also allegedly cause Johnson to be further limited by blurred vision, dizziness and drowsiness. Because none of these additional limitations were taken into account at steps 3 through 5 of the evaluation process, Johnson maintains that the ALJ's remaining findings of fact likewise are not supported by substantial evidence.

**d.     Finding of Fact No. 2.**

Step 2 of the sequential evaluation process requires that the claimant establish the existence of a severe impairment. See, 20 C.F.R. §§404.1520(c), 416.920(c). A severe impairment is defined under the same regulations to be any impairment or combination thereof that "significantly limits your physical or mental ability to do basic work activities...." *Id*. A physical or mental impairment must "result from anatomical, physiological, or psychological abnormalities which can be shown by medically accepted clinical and laboratory diagnostic techniques." 20 C.F.R. §§404.1508, 404.908. Further, the impairment must be established by medical evidence that includes signs, symptoms and laboratory findings, "not only by your statement of symptoms." *Id*. See, 20 C.F.R. §§404.1528, 416.928 (defining signs, symptoms and laboratory findings).

Step 2 of the five-step sequential evaluation process is considered to be a "*de minimis*" hurdle so that "'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). This judicial view has been repeatedly expressed in a number of published Sixth Circuit opinions.[1] Step 2 therefore is considered in the Sixth Circuit to be merely a regulatory means intended to "screen out totally groundless claims." *Farris*, 773 F.2d at 89. If an impairment has more than a minimal effect on the ability of the claimant to do basic work activities, then the ALJ must treat the impairment as being severe. See, SSR 96-8p, 1996 WL 374184 at *5.

Basic work activities are defined by regulation to be "the abilities and aptitudes necessary to do most jobs." See, 20 C.F.R. §§404.1521(a)-(b), 416.921(a)-(b). These activities include:

(1) physical function;

(2) the capacity to see, hear and speak;

(3) understanding, carrying out and remembering simple instructions;

(4) use of judgment;

(5) responding appropriately to supervision, co-workers, and usual work situations; and

(6) dealing with change in a routine work setting.

---

[1] *See, Murphy v. Sec'y*, 801 F.2d 182, 185 (6th Cir. 1986); *Salmy v. Sec'y*, 774 F.2d 685, 690-92 (6th Cir. 1985); *Farris v. Sec'y*, 773 F.2d 85, 89-90 (6th Cir. 1985).

*Id*. Thus, a claimant who hopes to establish a severe impairment at step 2 must not only come forward with medical evidence of some anatomical, physiological or psychological abnormality, but must establish also that the abnormality significantly limits his or her ability to do one or more of the six basic work activities listed above. See, 20 C.F.R. §§404.1521(b), 416.921(b).

With these principles in mind, the Magistrate Judge turns to fact finding no. 2 of ALJ Paris. In his hearing decision, the ALJ noted the existence of several diagnostic images of Johnson's brain that indicated the potential presence of an attenuation lesion near the occipital horn of her right lateral ventricle (Tr. 213), and on a separate, later occasion, the asymmetric dilation of her posterior horn right ventricle indicating a possible developmental variation or ventricular cyst in Johnson's brain (Tr. 287). Nevertheless, despite these objectively confirmed abnormalities, the ALJ rejected this evidence without explanation in favor of other diagnostic brain imaging that fell within normal limits (Tr. 213, 250). The ALJ also rejected what he characterized as Johnson's "long history of headaches" based on her normal neurological examinations by Dr. Shoaib during her treatment from December of 2008, through January of 2010 (Tr. 291-294, 295, 296-297).

The treatment notes of Dr. Shoaib, however, repeatedly reflect Johnson's continuing complaints of significant headaches during this time period. *Id*. In fact, the ALJ notes that "Dr. Shoaib has not been wholly successful in treating her headaches." (Tr. 26). Nevertheless, he rejected the severity of these repeated reports of severe headache based on Johnson's failure to take her prescribed medication regularly, or to follow up as often as directed by Dr. Shoaib. The problem, however, with these observations by the ALJ is that, as Johnson testified, she is indigent, having been unemployed since 1997, and has no dependable automobile

8

transportation (Tr. 7-8, 11, 12). Additionally, Johnson's testimony and the treatment notes of Dr. Shoaib reflect that she complained of the side effects caused by certain of her prescribed headache medication (Tr. 12, 291, 294, 295). Dr. Shoaib's office notes reflect that on at least one occasion Johnson discontinued her primary headache medication, Frova, which Shoaib previously had provided her free of charge, due to her inability to afford to purchase the medication (Tr. 295).[2] These circumstances therefor do not logically suggest a nonsevere impairment so much as the claimant's inability to afford treatment with anything more than nonprescription medication and her difficulties in arranging travel for treatment.

While Johnson has not had any invasive or other, more aggressive treatment for her headaches, other than medication provided by Dr. Shoaib, the absence of such additional treatment does not negate either the diagnostic imaging that reflects an abnormality in the right ventricle of Johnson's brain, or her acknowledged "long history of headaches" for which she sought both emergency and ongoing treatment through Flaget Hospital and Dr. Shoaib, respectively (Tr. 283-83, 287-90, 291-97). Johnson's testimony further suggests that such headaches do affect her ability to do basic work activities. *See* 20 C.F.R. §§404.1521(a)-(b), 416.921(a)-(b). For these reasons, the Magistrate Judge concludes that ALJ Paris erred as a matter of law in rejecting the claimant's migraine headaches as being a severe impairment at step 2 of the sequential evaluation process.

---

[2] Johnson points out in her motion, and the Commissioner does not dispute in his FLS, that Frova cost approximately $300 for a mere nine pills (DN 12, p. 5, n.6).

**e.    Findings of Fact Nos. 3-6.**

The next question that must be resolved is whether this error by ALJ Paris at step 2 of the evaluation process resulted in any harm to the claimant.  In other words, ALJ Paris did find at step 2 that Johnson has a severe impairment of major depressive disorder (DN 25).  The ALJ then continued his analysis through the remaining steps of the process to determine that given all of her impairments, both severe and non-severe, Johnson retained the residual functional capacity sufficient to return to her past relevant work as a bottling line attendant (Tr. 27-31).  In so doing, ALJ Paris took into full consideration the alleged limitations relating to Johnson's claimed headaches, including her need to lie down, her blurred vision, difficulty with concentrating and numbness in the extremities (Tr. 28).  ALJ Paris, however, found that while Johnson does have medically determinable impairments that could be expected to cause her alleged symptoms, her testimony concerning the intensity, persistence and limiting effects of these symptoms was not credible, a finding that Johnson does not challenge in her motion for summary judgment (Tr. 29).

The hearing decision of ALJ Paris contains repeated examples of significant inconsistencies between Johnson's alleged symptoms, her medical treatment records and her statements to various care providers (Tr. 29). Review of the record confirms that existence of the inconsistencies cited by the ALJ. Accordingly, the Magistrate Judge must afford this credibility determination by ALJ Paris substantial deference.  *See, Hardaway v. Sec'y*, 823 F.2d 922, 928 (6th Cir. 1987) (the ALJ's "conclusions with respect to credibility should not be lightly discarded and should be accorded deference").  ALJ Paris therefore declined to include in his RFC finding all of the limitations claimed by Johnson, but none the less included such limitations as simple

work activities, low stress and limited contact with the public and co-workers (Tr. 23-32).

Because ALJ Paris continued to consider the alleged limitations arising from Johnson's headaches, but properly determined that the intensity, persistence and limiting effects of Johnson's headache-related symptoms were not fully credible, any error by the ALJ in failing to find Johnson's migraine headaches to be a severe impairment is legally irrelevant. *Miziarz v. Sec'y*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ found the existence of a severe impairment of depresssion and continued the sequential evaluation process to consider the combined effect of all impairments, including those that the ALJ deemed to be not severe, then the requirements of the five-step sequential evaluation process were satisfied. See, 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). *Simpson v. Comm'r*, 344 Fed. Appx. 181, 190-91 (6th Cir. Aug. 27, 2009); *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 517 (6th Cir. Oct. 31, 2008); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. Feb. 22, 2008).

Although Johnson insists that ALJ Paris failed to consider the combined impact of all of her impairments on her residual functional capacity, examination of the ALJ's hearing decision shows otherwise. ALJ Paris did consider Johnson's subject symptomology related to her headaches when he determined her residual functional capacity (Tr. 27-30). ALJ Paris simply declined to fully credit her testimony in this regard for a number of very good reasons, which he sets forth on pages 6 and 7 of his opinion (Tr. 28-29). Accordingly, we cannot agree with Johnson that the ALJ "clearly did not consider the Plaintiff's migraine headaches at any other step beyond the second step." The ALJ did so, but simply declined to unconditionally accept Johnson's credibility in this regard.

For this reason, the Magistrate Judge cannot abandon the *Miziarz* case in favor of

*Stephens v. Astrue*, Case No. 09-55-JBC, 2010 WL 1368891 (E.D. Ky. 2010). Unlike the present case, the ALJ in *Stephens* failed to address or include any limitations of Stephens' mental impairments when determining her RFC. *Id*. No such omission occurred in this case where the ALJ included Johnson's subject symptomology, but merely declined to accept the credibility of the full extent of her subjective complaints. The Magistrate Judge therefore does not find the *Stephens* decision to be more persuasive in this present case. Instead, pursuant to *Miziarz*, the Magistrate Judge concludes that any error in failing to find the claimant's migraine headaches to be a severe impairment at step 2 of the sequential evaluation process was clearly harmless error in light of the *Miziarz* and ALJ Paris's continuation of the sequential evaluation process after determining that Johnson has a severe impairment of major depressive disorder (Tr. 25).

## RECOMMENDATION

For the reasons set forth above, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED**.

## NOTICE

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd.,* 474 U.S. 140 (1985). 28 U.S.C. § 636(b)(1)(c); Fed.R.Civ.P. 72(b).

Copies to Counsel of Record